SOUTHERN ORCHARD PLANTING COMPANY *v.* TURNER.

Opinion delivered September 28, 1908.

1. ATTACHMENT—VALIDITY.—Where a farmer abandoned his crop, and the landlord took possession of the crop and gathered and sold it, and at the same time attached his goods, upon the ground that he was about to remove his property from the State, without leaving enough to pay his claim, the validity of the attachment depended upon whether the market value of the crop at the time of the attachment was equal to the landlord's claim, not upon whether the crop, under the landlord's management, subsequently realized the amount of his claim or not. (Page 384.)

2. INSTRUCTIONS—CONFUSION OF ISSUES.—Where a landlord sued upon an account against his tenant, and at the same time procured an attachment to be issued against the tenant for a debt claimed to be due, the issues in the two suits are separate and should not be confused in the court's instructions. (Page 385.)

Appeal from Polk Circuit Court; *James S. Steel,* Judge; reversed.

STATEMENT BY THE COURT.

Turner rented forty acres of land in Sevier County from the Southern Orchard Planting Company for the year 1905. The company furnished him supplies and a team. In 1906 he owed a balance to the company, and rented another forty-acre tract from it, and was to cultivate an orchard thereon, for which he was to receive $50, and to raise a crop of cotton and corn. The company continued to supply him. He failed to cultivate the orchard as required by the company, and refused to gather his crop or to complete his contract with the company, and on the 7th day of October he was notified to vacate. On the 10th of October the orchard company made an affidavit to attach his goods, the affidavit stating that he was about to remove his property, or a material part thereof, out of this State, not leaving enough therein to satisfy the plaintiff's claim, in conformity to section 344 of Kirby's Digest. There was a trial in the justice's court which resulted in a judgment for the plaintiff for the full amount of the claim, and attachment was sustained. The defendant appealed to the circuit court, and, in October, 1907, the case was tried in the Polk Circuit Court, where it was taken on a change of venue.

The orchard company took charge of the crop, gathered and marketed it, and claimed a balance due, after crediting him with the proceeds of the crop, of $166.01. The defendant claimed that he had been charged with unreasonable amounts, and that he had not received proper credits by the orchard company. There was no dispute as to the indebtedness at the time of the attachment.

At the time of the attachment, three bales of cotton had been gathered and the proceeds credited to Turner. This amounted to $156.20, leaving an undisputed balance at that time of $175.30. Subsequent to the attachment, he received credit for four and a half bales of cotton, $37.38 for cotton seed and for one hundred bushels of corn at fifty cents per bushel. These credits were received in October, November and December, 1906, the last being the 17th of December.

The court gave these instructions: "If you believe from a preponderance of the evidence that the defendant, J. J. Turner, was at the time this suit was instituted indebted to the plaintiff, the Southern Orchard Planting Company, in any amount, then in that event your verdict should be for the plaintiff for whatever amount you should find due from the evidence.

"The defendant denies the account sued upon, and the burden is upon the plaintiff to establish each item of the account, and it is not sufficient of itself to establish the fact that the statements introduced in evidence are correct copies of the book entries, but the correctness of the book accounts themselves must be established by a fair preponderance of the evidence.

"You will charge the defendant with whatever amount of the account that is established, together with a reasonable expense incident to caring for, harvesting and marketing the crop, and you will credit him with a reasonable value of the crop received by plaintiff, together with the amount of his personal labor established by a preponderance of the evidence upon the part of the defendant, and you will then strike a balance and give judgment therefor in favor of whichever party the balance is due to.

"If you find for the defendant upon the account, you will give him judgment for damages in whatever sum you find from the evidence was a reasonable usable value of the property attached from the time attached to the present time, not exceeding $150."

The jury returned a verdict of $50 for the defendant, and the orchard company has appealed.

*J. S. Lake* and *J. D. Head,* for appellant.

*Otis T. Wingo,* for appellee.

Hill, C. J., (after stating the facts). It is earnestly insisted that the evidence does not sustain the verdict; and it must be admitted that it is doubtful whether the record shows sufficient evidence to sustain the verdict that there was no indebtedness. It was within the province of the jury to disallow the item of $50 for gathering the crop, and possibly some other items that were attacked as unreasonable, which are not definitely explained in the evidence; and the jury were authorized, under the defendant's evidence, to have allowed him some credits which he was not given. But whether, allowing the full force to all of the defendant's evidence, there was enough evidence to sustain the verdict may well be questioned. As the instructions were erroneous, however, it is not necessary for the court to pass upon the sufficiency of the evidence, as the case may be more fully developed at another trial.

At the time of the attachment, Turner was owing the orchard company $175.30, after allowing him full credit for three and half bales of cotton that it had received. If the fair market value of the property that he left was sufficient to have paid the plaintiff's claim at that time, then the plaintiff had no ground of attachment. It might have been that the market value of his crop at that time was not equal to the plaintiff's debt, and that the plaintiff, by good husbandry, worked out the crop so that it did pay its claim; in which event the attachment should be sustained, and the cost incident thereto be adjudged against the defendant up to the time the debt was liquidated by plaintiff's realization of the crop. On the other hand, the crop may have been of a market value more than sufficient to have paid the plaintiff's claim, and yet the plaintiff, by poor husbandry, had not received enough therefrom to pay its debt; in which event the attachment should not be sustained. There was another issue as to whether the debt had been paid. If the debt had been paid by the plaintiff so gathering and marketing the crop that it liquidated the indebtedness, then there should be no recovery.

in favor of the plaintiff for the debt; and if it overpaid it, there should be a recovery in favor of the defendant for the excess; and if, under proper care, the crop had not paid the debt, the plaintiff should have judgment for the balance. This is a separate issue from the one on the attachment, and should not be confounded with it, and the fate of the attachment made to hang upon it.

In the third instruction the court correctly instructed the jury as to striking a balance betwen the plaintiff and defendant and giving judgment accordingly; but in the fourth instruction the jury were told after such balance was struck they should find for the defendant on the account, then they should give him judgment for damages in whatever sum the evidence showed was the reasonable usable value of the property attached from the date of the attachment. This was confounding the two issues, and made the sustaining of the attachment dependent upon the outcome of the crop as handled by the plaintiff. It was proper for the question of debt to be determined by that, but not proper for the issue on the attachment to be so determined, for the reasons heretofore explained.

Judgment reversed and cause remanded.